FAIRCLOTH vs. DELEON & BROTHER.

No waiver or undertaking in the contract for the purchase of commercial fertilizers, or in the note given for the price, will bar or estop the buyer from pleading the want of legal inspection, when sued by the seller on such contract or note.

July 11, 1888.

Fertilizers.  Contracts.  Waiver.  Estoppel.  Before

Judge ATKINSON.    Appling county.    At Chambers, August 31, 1887.

DeLeon & Brother sued W. C. Faircloth in a justice's court on a promissory note, which contained, among other stipulations, the following:

"The consideration of this note is commercial manure sold me by said Albert DeLeon & Brother, or their agent. They expressly refuse to make any warranty of the same, or any representation as to its quality or value, leaving me to rely upon the fact only that the same has been inspected under the laws of the State, as evidenced by the brand or tag on every sack or barrel. I do hereby agree that I will examine said sacks or barrels of guano, and if the brand or tags are not upon the same, that I will give written notice of the said fact to the said Albert DeLeon & Bro., or their agent, within ten days from this note and before using said manure; and in default of said notice, I shall be estopped from denying the same. The commissioner of agriculture appointed by law, under whose permit the fertilizer is sold, is hereby constituted agent of the subscriber, who agrees to be bound by said permit. I accept said guano on these terms," etc.

The defendant pleaded (1) that the note was given for a fertilizer known as Columbia guano, which proved to be utterly worthless; that he applied it to land reasonably suited to the production of the crops planted thereon; that he cultivated the land in a planter-like manner; that the seasons were timely and good; but that the guano produced no beneficial results whatever; hence he pleads a total failure of consideration, etc. (2) That the note was obtained by fraud, because the guano never was inspected and analyzed as required by law. (3) That if it ever was inspected, the analysis as represented by the brand on the sacks (that being all the analysis shown to defendant) is not the analysis of the State chemist or any one authorized by law.

Counsel for plaintiffs moved to strike these pleas, and the magistrate struck the first and allowed the other two to stand. The case was tried before a jury. The

plaintiffs introduced the note; a certificate of analysis from the commissioner of agriculture; and evidence tending to show that the guano was properly analyzed by the proper authorities, and that the sacks were properly tagged and branded. The defendant testified that he bought the guano from the plaintiffs' agent and hauled it; that there were no inspectors' tags on it that he saw, and he thought he would have seen them if they had been there; that a Mr. Creamer farmed for him that year and was to pay for a part of the guano, and had about paid his part; and that the guano did no good to the crops to which it was applied. He also introduced a printed analysis that was stamped on one of the sacks, differing slightly from the analysis introduced by plaintiffs.

The jury found for the defendant. The plaintiffs carried the case by *certiorari* to the superior court, alleging that there was error in not striking all the pleas; in allowing defendant to introduce evidence tending to show that the guano was not inspected; and that the verdict was contrary to law and evidence. The presiding judge held that, in view of the contract contained in the note, the pleas should have been stricken on motion; that this done, there could be no contested issue of fact in the case, and plaintiffs would be entitled to a verdict on production of the note; and that therefore, under §4067 of the code, it was his duty to render a final judgment: whereupon he adjudged that the *certiorari* be sustained, and that the plaintiffs recover judgment for the amount of the note, with interest and costs. The defendant excepted on the grounds that the court erred in sustaining the *certiorari* and in rendering final judgment.

E. D. Graham, for plaintiff in error.

G. J. HOLTON & SON, by brief, *contra.*

BLECKLEY, Chief Justice.

The second plea, to-wit, "that the note was obtained by fraud, because the guano never was inspected and analyzed as required by law," was good in substance. The fraud imputed was not upon the purchaser but upon the law, and thus construed the real import of the plea is that the sale was illegal for the reasons alleged. The code, in sections 1576(b), (d), makes it unlawful to sell or even offer for sale, without previous inspection and analysis, and prescribes a penalty for so doing. There can be no bar or estoppel, by waiver, covenant or otherwise, against pleading the violation of a penal law in defence to an executory contract, the very making of which, or attempt to make it, being the act, or a part of the act, of violation. The waiver or covenant relied upon is as much a part of the forbidden contract as is the promise to pay for the goods. If the executory contract is void for illegality as to the promise, it must also be void as to waiver and covenant. What consideration was there for these latter, except the very same as for the former, to-wit, the illegal sale? Public policy forbids that any executory stipulation based on an illegal transaction, and deriving no efficacy from any other, shall be an obstacle to opening the transaction to inquiry at the instance of the innocent or less guilty party. The violator of a public law cannot shun the consequences, even the civil consequences, by making terms and conditions, with the other party concerned. He cannot entitle himself to notice that the requisites of law are not complied with by himself. When they are omitted, he must know it, and forbear to trade till they are observed.

The plea may not be true, but if true it is quite suffi-

·cient. The superior court erred in holding otherwise, and in finally disposing accordingly of the case embraced in the *certiorari*.

Judgment reversed.