[S. F. No. 7949.   Department Two.—September 17, 1918.]

GEORGE A. CRAWFIS, Plaintiff and Respondent, v. EDWARDS, BREWSTER & CLOVER (a Corporation), Defendant and Respondent; C. H. SMITH et al., Interveners and Appellants.

PROMISSORY NOTES—BUILDING LOAN TRANSACTION—PURCHASE PRIOR TO MATURITY—KNOWLEDGE OF OUTSTANDING EQUITIES—CANCELLATION FOR FAILURE OF CONSIDERATION.—In an action by a mortgagor to cancel several promissory notes, non-negotiable in form, and a mortgage given to secure their payment on the ground of failure of consideration, a judgment canceling the instruments was properly made as against the purchasers of the notes and mortgage before maturity, where it was found on sufficient evidence that the purchase was made with full knowledge that the transaction was a building loan, and that the full consideration had not then passed to the mortgagor.

ID.—NON-NEGOTIABLE INSTRUMENTS—DEFENSES.—In such action, the instruments having been non-negotiable in form, all defenses available in a foreclosure suit in favor of the mortgagor against the mortgagee were available against the assignees.

APPEAL from a judgment of the Superior Court of Alameda County.   William H. Donahue, Judge.

The facts are stated in the opinion of the court.

Brittain & Kuhl, and Earl D. White, for Interveners and Appellants.

Edgar C. Chapman, for Plaintiff and Respondent.

MELVIN, J.—Plaintiff sued as mortgagor to cancel fourteen promissory notes secured by a mortgage and also to cancel the mortgage itself. Edwards, Brewster & Clover,

corporation defendant, is the mortgagee, and the interveners, appellants, are persons who acquired the fourteen promissory notes prior to maturity, paying for the said notes their face value.  Interveners appeal from the judgment in favor of plaintiff.

The facts, about which there is little if any dispute, are as follows:

Crawfis owned certain real property and desired to place a building thereon.  Patton, a contractor, undertook to secure a loan for Crawfis if he, the said Patton, should be given the contract to erect the building on the land belonging to Crawfis.  Accordingly, arrangements were made with Edwards, Brewster & Clover, and Crawfis executed the mortgage here in question and fourteen promissory notes aggregating twelve thousand dollars in face value.  The notes and mortgage were delivered on November 23, 1914, and on the same day and as part of the same transaction Crawfis entered into a contract by which he was required to deposit with the corporation six thousand dollars.  By the latter contract it was recited that the "cash received and the notes enumerated," making the sum of eighteen thousand dollars in all, was to be delivered to G. A. Crawfis in specified installments as progress payments became due on the building to be thereafter erected.

The building was constructed and as the work went on the corporation paid $6,060, according to agreement, but failed and refused to pay any further sum either to Dr. Crawfis or to his building contractor.

Interveners purchased the notes before maturity and it is not denied by them that these instruments are non-negotiable in form.  It is contended, however, that plaintiff is estopped by his conduct from questioning the validity of the claims of interveners, and that it was the intention of all of the parties to the transaction that the fourteen notes should be treated and offered for sale as negotiable instruments.  The judgment provided that plaintiff should restore the $60, the amount in excess of the six thousand dollars deposited by him, which was paid for the purposes of the building by the corporation, but the further contention is made by appellants that inasmuch as some of the money realized from the sale of the notes came into the hands of Edwards, Brewster & Clover on the very days upon which certain payments were made on the building contract, it is fair to assume that the money so paid and not a part of the six thousand dollars de-

posited by plaintiff went into the building, and these interveners assert that at the very least they should be entitled to share in the fund of six thousand dollars in the proportion that the sum of twelve thousand dollars bears to eighteen thousand dollars.

The court found that by reason of the refusal of the corporation to make the next payment on the building following the exhaustion of the six thousand dollars, the consideration for the notes and mortgage failed; that on or about the 15th of January, 1915, and at various subsequent times down to March 3d of that year, Edwards, Brewster & Clover, not acting as agent for Dr. Crawfis, requested the interveners to purchase the notes, and pursuant to such request the instruments were sold for their full face value; that neither at the times of purchase nor at any time did either plaintiff or the corporation represent to the purchasers that said Edwards, Brewster & Clover was the agent of Dr. Crawfis in the sale or distribution of the notes; and that as matter of fact the corporation was not and did not act in any of the transactions as Dr. Crawfis' agent. There was a finding specifically negativing the contention of appellants that the very purpose of issuing fourteen notes rather than one was to further the success of the alleged agency, and there is a finding "that plaintiff, George A. Crawfis, executed said fourteen promissory notes, rather than one, solely at the instance of said defendant Edwards, Brewster & Clover, and without any intention on the part of plaintiff, George A. Crawfis, to authorize said defendant Edwards, Brewster & Clover to sell said notes, or any of them, as the agent of plaintiff George A. Crawfis." There were findings that no one of the interveners made any inquiry of plaintiff before purchasing the notes, and that when the sales were made the corporation represented that it was the mortgagee in fact. There was also a finding that "said interveners took said notes and paid the purchase price thereof with full knowledge that the loan contemplated by the plaintiff, George A. Crawfis, from the defendant, Edwards, Brewster & Clover, was a building loan, and that said building loan was not to be paid by defendant Edwards, Brewster & Clover to plaintiff George A. Crawfis or to said Patton, except as the building contract should be performed by said Patton in accordance with its terms and to the satisfaction of defendant Edwards, Brewster & Clover, the mortgagee of said mortgage."

If these findings are sustained by the evidence, the judgment is correct. The finding last quoted is supported by the testimony of Mr. Smith, one of the interveners, whose declarations under oath were by stipulation made binding upon his associates. He said that, when asked by Mr. Edwards, representing the corporation, to buy some of the notes, he investigated the mortgage and the value of the property. It seemed to him that the value was there, so he purchased the notes. Asked if Mr. Edwards said anything to him about a contract between the corporation and Dr. Crawfis, Mr. Smith said: "Yes. We went over the entire matter. I looked over the mortgage, and he told me about this private contract, and I have the impression he showed it to me. I would not like to say positively. I think there is a further paper that he told me about, that is some contract, the building contract."

It will thus be seen that not only were the purchasers of the non-negotiable instruments charged with knowledge of outstanding equities, but they knew or had the means of knowing by actual inspection of the contracts that their purchase money was to become a part of a fund into which six thousand dollars had already been paid and that the full consideration for the notes had not yet passed to the mortgagor. All defenses available in a foreclosure suit in favor of Crawfis against Edwards, Brewster & Clover could have been urged against them, and, consequently, they stand in the place of that corporation in an action to rescind.

We do not agree with appellants in their theory that respondent, Dr. Crawfis, is estopped by his conduct to deny that the corporation was his agent. The mere fact that he executed fourteen notes instead of one does not prove agency, nor does it amount to any effort on his part to mislead innocent purchasers of the notes. He probably did comply with the request of the corporation, knowing that the latter would endeavor to dispose of the notes and that a number of small notes would be easier to sell than one large note. The mortgagor cannot prevent the mortgagee from disposing of the note or notes supporting the mortgage, even if he so desires. We fail to see how the execution of the small notes furnishes either proof of mere agency on the part of the corporation to secure a loan for Dr. Crawfis or was any part of conduct amounting to an estoppel. It is true that the mortgage recited the receipt of the twelve thousand dollars, but the contract of escrow between Crawfis and the corporation and the building contract between Crawfis and Patton were parts of

the same transaction, and these were not merely available to Smith and the other interveners, but were in fact called to the attention of the purchasers of the notes. There is, therefore, no similarity between this case and such authorities as, for example, *National Hardware Co.* v. *Sherwood,* 165 Cal. 1, [130 Pac. 881], in which it was held that Firth could not impeach the recitals in a deed of trust to which he was a party. In that case there was by the record a representation as a fact of something not true made with the intention that another should act upon it. It would merely prolong this opinion to no good purpose to analyze all the authorities cited by appellants. In each, the facts differ radically from those involved in the case at bar. In the one, which is "most nearly like the case at bar," according to learned counsel for appellants (*Kucher* v. *Scott,* 96 Wash. 317, [165 Pac. 82]), Robinson & Co., the nominal mortgagee, was held to be an agent of the mortgagor and the loss occasioned by the dishonesty of its secretary was not visited upon the assignee of the mortgage. But the representative of Robinson & Co., who induced plaintiff and his wife to execute the note and mortgage, informed them that he was getting the money from a man who lived in Portland. Moreover, this was in accordance with the invariable custom of the house of Robinson. In the case at bar there were no such facts. Edwards, Brewster & Clover did not represent any undisclosed principal, nor does it appear that the invariable course of business of that corporation was to negotiate the sale of notes and mortgages for clients.

The conclusion which we have reached and our conviction that the court properly held the interveners as purchasers of non-negotiable instruments bound by the equities in favor of the mortgagor makes it unnecessary to discuss the contention that some of the money paid for the erection of the building actually was derived from the sale of notes rather than from the six thousand dollars deposited by Dr. Crawfis with the corporation. The appellants were bound to consider the agreement by which the corporation was to expend that fund before any moneys secured by the mortgage should be used, and the plaintiff was under no obligation to inquire the exact source from which the six thousand dollars actually paid to his contractor was obtained.

The judgment is affirmed.

Lorigan, J., and Wilbur, J., concurred.