## HAMMOND, HULL & COMPANY *vs.* WILCHER.

The official duty of inspecting fertilizers, provided for by the laws of this State, cannot be performed beyond the limits of the State. The commissioner of agriculture has no power to authorize extra-territorial inspection, or to dispense with inter-territorial inspection. Without the latter, any sale of commercial fertilizers made within the State is unlawful, and a contract for the price will not be enforced.

November 22, 1887.

Fertilizers. Sales. Contracts. Before Judge LUMPKIN. Glascock Superior Court. February Term, 1887.

Suit in justice's court was by the payees against the maker upon a note dated May 9th, 1885, given for the price of a commercial fertilizer known as Farmers' Ammoniated Dissolved Bone; the note contained numerous admissions and waivers, the sum of which was that the debt

was absolute and open to no defence. Defence was made, however, involving the question whether the fertilizer had been duly inspected, so as to be legally sold in this State. The evidence was conflicting as to whether the sacks were branded and tagged, but as to the place of inspection there was no conflict. The inspection was by one of the inspectors of this State, but made in South Carolina at the plaintiffs' factory, and was of the article in bulk before it was put in the sacks in which it was sold. One of the rules and regulations of the season of 1884–5, promulgated by the commissioner of agriculture, declared that "inspections may be made outside of the State, or in bulk." The sale was through plaintiffs' agent in Warrenton, Georgia, and there the note was executed. The jury found for the defendant, and the plaintiffs sued out a *certiorari*, which the superior court overruled because the inspection was in South Carolina, and none made in Georgia.

LAWTON & CUNNINGHAM; DENMARK & ADAMS; R. L. PIERCE; E. P. DAVIS, for plaintiffs in error.

TUTT & LOCKHART; THOS. E. WATSON; B. F. WALKER, for defendant.

BLECKLEY, Chief Justice, (after stating the above facts.)

Inspectors of fertilizers are officers of this State. They are not to exceed six in number. They are to take an oath faithfully to discharge all the duties required of them in pursuance of the statute. They are to give bond for the faithful performance of their duties. These duties are to take samples of all fertilizers, or chemicals for manufacturing the same, intended for sale or distribution in this State; to furnish inspectors' tags, or other device prescribed, for each and every package; to make such reports as may be required by the commissioner of agriculture; to collect and pay over to the comptroller-general on the first of each month all sums collected during the month

preceding; and to perform such other services incident to their offices as may be required by the commissioner of agriculture. They are forbidden to inspect unless the fees for inspection shall be first paid. Giving or selling of his brand by an inspector, to be used upon uninspected fertilizers or chemicals, for the purpose of recommending or aiding in the sale or distribution of the same in this State, is an offence; so also is failing to inspect as required by law. Selling any fertilizer without inspection is an offence; and it is the duty of inspectors to prosecute every person who shall violate the provisions of the statute. Code, §§1553(a) to 1553(h); 1576 to 1576(g); addenda to code, §1553(a), p. 10. The places designated for inspection are places within this State. *Id.* §§1573, 1576(b).

No doubt it would be competent for the legislature to authorize inspection beyond the limits of the State. The exercise of such power in the matter of taking the acknowledgment of deeds, etc., is familiar. During the late war, statutes providing for the exercise of suffrage by soldiers in the Confederate service were passed, and similar statutes enacted by some of the Northern States have been upheld. See State *vs.* Maine, 16 Wis. *398.

The general rule, however, is, that every statute is presumed to be enacted with reference to the local jurisdiction of the legislature which passes it. The People *vs.* Merrill, 2 Park. C. R. 590.

In all the legislation on the subject of fertilizers, there is not a trace of any purpose on the part of the legislature to prescribe or even permit extra-territorial inspection. Without some statute to authorize it, an officer could not act in his official capacity beyond the limits of the State.

This, at least, is the general rule. It may be that some mere ministerial fiscal acts can be performed abroad. Such was the opinion of the Supreme Court of the United States in Lynde *vs.* The County, 16 Wall. 6, where certain acts performed in New York by a county officer of Iowa were pronounced obligatory upon the county. There, however,

the rights of a *bona fide* purchaser had intervened. Moreover, the act was not one of commercial police, and of this nature are the acts required of inspectors of fertilizers. The police functions pertaining to officers of this State are not to be performed beyond its territory, unless the law so prescribes. Whilst inspecting fertilizers in South Carolina the person, the property and the act, are all under the jurisdiction of that State,—none of them subject to the jurisdiction of this State. When so acting, the inspector would not be amenable to our law; his oath would not bind him; his bond would be no security for his fidelity; he would not be subject to criminal prosecution for acts done there in violation of the statutes of this State, such statutes not undertaking to assert over him any authority touching his conduct in a place where he can act only as a private citizen.

It has been held that a judge cannot grant a *certiorari* when beyond the limits of the State. *Buchanan vs. Jones,* 12 *Ga.* 612. Also, that a magistrate cannot attest a deed when out of the county for which he was elected and commissioned. *Fain vs. Garthright,* 5 *Ga.* 12. In the latter case it is said: " Their election, commission and official oath confine their official powers to the county in which they were elected." True it is that the statute confers on the commissioner of agriculture power to prescribe and enforce such rules and regulations as he may deem necessary to carry fully into effect the true intent and meaning of the statute. Code, § 1553(h). But this must be construed as a grant of power to be exercised by him within the State, and for the purpose of having other duties performed also within the State. He has no license to go beyond the State to exercise his powers, nor to send other officers beyond it to exercise theirs. Whilst the legislature could authorize inspectors to act elsewhere than in the State, the commissioner of agriculture could not do so without express authority from the legislature, and such authority is nowhere granted.

It follows that an inspection made in South Carolina was equivalent to no inspection, and the sale, for lack of inspection, being illegal, the contract of the purchaser to pay for the article was void, and could not be enforced. The court was therefore right in overruling the *certiorari.*

Judgment affirmed.