## 19360. STATE OF GEORGIA *et al. v.* COCA-COLA BOTTLING CO.

ARGUED JULY 10, 1956—DECIDED SEPTEMBER 7, 1956—REHEARING DENIED OCTOBER 11, 1956.

*Eugene Cook, Attorney-General, H. Grady Almand, Jr., Wm. L. Norton, Jr., Assistant Attorneys-General, Broadus B. Zellars, Ben F. Johnson, Jr., Deputy Assistant Attorneys-General, Benjamin B. Blackburn, III,* for plaintiff in error.

*Edward R. Kane, Jones, Williams, Dorsey & Kane,* contra.

CANDLER, Justice. The Coca-Cola Bottling Company, a corporation with its principal office and place of business in Fulton County, Georgia, sued the State of Georgia and Georgia's Revenue Commissioner for a refund of $35,547.62 on the amounts of income tax paid by it for the years 1949, 1950, and 1951, alleging the amount sued for to be overpayments. The defendants demurred to the petition on the ground that it stated no cause of action, and by their amended answer denied that the plaintiff was entitled to recover the amount sued for or any part thereof. The demurrer was overruled. By consent, the case was tried by the judge, without a jury, and he found that the plaintiff was entitled to recover the full amount sued for, with interest thereon as provided by law, and rendered judgment accordingly. The defendants excepted and sued out a writ of error to the Court of Appeals, assigning error on the judgment overruling their general demurrer and on the final judgment. That court, with Judge Quillian dissenting, affirmed the case. *State of Georgia v. Coca-Cola Bottling Co.,* 93 *Ga. App.* 609 (92 S. E. 2d 548). For the tax years involved, the Court of Appeals held: (1) the plaintiff was engaged in the business of selling tangible personal prop-

erty, namely, Coca-Cola syrup, both in and outside of Georgia on its own account as principal and within the meaning of Code (Ann. Supp.) § 92-3113 (4), which section comes from an act the legislature passed in 1950 (Ga. L. 1950, p. 299); (2) in computing the amount of its net income which should be apportioned to Georgia for taxation, the plaintiff was entitled to use the three-factor-ratio formula prescribed by Code (Ann. Supp.) § 92-3113 (4), though not engaged in any manufacturing or bottling operations, and at no time during the taxing period having any physical possession or inventories of Coca-Cola syrup anywhere for any purpose; (3) for all income-tax purposes the Revenue Commissioner was bound by and restricted to the three-factor-ratio formula prescribed by Code (Ann. Supp.) § 92-3113 (4), regardless of how many factors prescribed by the section were lacking in the taxpayer's business activities; (4) in ascertaining the "gross receipts ratio" of the apportionment formula, the plaintiff, whose principal office and place of business was in Georgia, was not required by Code (Ann. Supp.) § 92-3113 (4) to include as gross receipts attributable to business done in Georgia its total gross receipts from shipments originating in Georgia, regardless of their destination; and (5) the income-tax act of 1950 repealed by implication the provisions of § 92-3002 (n) of the Code of 1933, which provides that "The word 'sale or sales' wherever appearing in Part IX of this Title [Income Taxes] for the purpose of apportioning net income to Georgia shall be deemed to be the total value of all sales made through or by the offices, agencies, or branches located within this State, regardless of the destination." These are the only rulings made by the Court of Appeals on which error was assigned in the application for certiorari which this court granted, and no other ruling made in the cause by that court can be considered by this court.

■ For the tax years involved, the defendants take the position that the plaintiff was not engaged on its own account as principal in the business of selling tangible personal property, namely, Coca-Cola syrup, but they contend that it was, as an agent of The Coca-Cola Company, engaged only in the business of rendering marketing services and receiving royalties as compensation therefor. This position is not well taken. By express terms of a written contract which was executed on July 21, 1899, The Coca-

Cola Company was for the years here involved obligated to sell the plaintiff, at a fixed price per gallon, a sufficient amount of Coca-Cola syrup to supply its customers in a territory comprising eight southeastern States, and the plaintiff was likewise bound by the same contract to purchase all syrup needed by its customers from The Coca-Cola Company at the contract price. When the plaintiff received an order for such syrup from one of its customers, it immediately placed an order for the exact amount of syrup so ordered with The Coca-Cola Company, and the latter filled the order and shipped the syrup by common carrier direct to the plaintiff's customer. By written contracts between the plaintiff and its several customers title to the syrup ordered passed to the latter on delivery of it at the customers' places of business, and this court has frequently and consistently held that such contracts are sufficient to vary the general rule that delivery to a common carrier is delivery to the purchaser. See *Wade & Co.* v. *Hamilton,* 30 *Ga.* 450; *Star Glass Co.* v. *Longley & Robinson,* 64 *Ga.* 576 (4); *Dunn* v. *State,* 82 *Ga.* 27 (8 S. E. 806, 3 L. R. A. 199); *Atlantic Phosphate Co.* v. *Ely,* 82 *Ga.* 438 (9 S. E. 170); *Falvey* v. *Richmond,* 87 *Ga.* 99 (13 S. E. 261). The plaintiff alone was liable to its customers for a breach of its contract obligation to see that the amount of syrup ordered was delivered to the customers' places of business. The Coca-Cola Company billed the plaintiff for all syrup so ordered, and the plaintiff paid The Coca-Cola Company for it. If the customers never paid their accounts for syrup, the plaintiff, and not The Coca-Cola Company, was the loser. The plaintiff could call on The Coca-Cola Company to stop a shipment of syrup in transit and could hold it liable for its failure to act as so directed. The Coca-Cola Company accepted no orders for syrup from the plaintiff's customers. The Coca-Cola Company and The Coca-Cola Bottling Company are separate and distinct corporate entities. In these circumstances we think the Court of Appeals correctly held that the plaintiff was, during the period of time here involved, engaged in the business of selling tangible personal property, both in Georgia and in other States, on its own account as principal and not as an agent. Hence, its ruling on this point is not erroneous, as contended by the defendants.

The next two assignments of error present for decision the

same question, and for that reason they may be dealt with together. Our first income-tax statute was enacted in 1931 (Ga. L. 1931, Ex. Sess., p. 24; Code 1933, Title 92). For the tax years involved every domestic corporation and every foreign corporation was required to pay this State an annual income tax on its net income from property owned or business done in this State at the rate then fixed by Code § 92-3102. Where the annual income of a corporate taxpayer was derived from the manufacture or sale of tangible personal property, both within this State and elsewhere, Code § 92-3113 (c) prescribed a three-factor-ratio formula to be used by such a taxpayer in determining the amount of its net income which should be allocated and apportioned to this State. The three factors of the formula were: (1) a tangible property ratio, (2) a manufacturing cost ratio, and (3) a sales ratio. By an act which the legislature passed in 1941 (Ga. L. 1941, p. 210), Code § 92-3113 as it then read was repealed in its entirety and a new section having the same number was enacted. The new section prescribed a three-factor-ratio formula to be used by a corporate taxpayer in determining the amount of its net income which should be allocated and apportioned to this State when such income was derived in part from property owned or business done in this State and in part from property owned or business done elsewhere. The factors were: (1) a tangible property ratio, (2) a salaries and wages ratio, and (3) a sales ratio. Respecting the three factors of the formula, the act provided (p. 217): "The tangible property ratio, the salaries and wages ratio and the sales ratio are separately determined, the three percentages averaged, and the net income of the corporation allocated and apportioned to Georgia according to said average." However, the act of 1941 expressly declared that, if such a taxpayer in the conduct of its business only had or employed two or one of the prescribed factors, it could use the number it actually had for the purpose of determining the amount of its net income which should be allocated and apportioned to this State for tax purposes. In 1950 the legislature expressly repealed Code § 92-3113 as it then read and enacted a new section numbered as before. The new section declares in part: that "The tax imposed by this law shall apply to the entire net income, as herein defined, received by every corporation, foreign or domestic, owning prop-

erty or doing business in this State. Every such corporation shall be deemed to be doing business within this State if it engages within this State in any activities or transactions for the purpose of financial profit or gain, whether or not such corporation qualifies to do business in this State, and whether or not it maintains an office or place of doing business within this State, and whether or not any such activity or transaction is connected with interstate or foreign commerce. If the entire business income of the corporation is derived from property owned or business done in this State, the tax shall be imposed on the entire business income, but if the business income of the corporation is derived in part from property owned or business done in the State and in part from property owned or business done without the State, the tax shall be imposed only on that portion of the business income which is reasonably attributable to the property owned and business done within the State, to be determined as follows:

. . . (4) Where income is derived from the manufacture, production, or sale of tangible personal property, the portion of net income therefrom attributable to property owned or business done within this State shall be taken to be the portion arrived at by application of the following Three-Factor Ratio: (a) . . . The ratio of the average of the monthly inventories of all products held in this State for sale, lease or other distribution or use in connection with the trade or business of the taxpayer during the taxable year to the average of the total monthly inventories of all products held everywhere for sale, lease or other distribution in connection with the trade or business of the taxpayer . . . (b) . . . The ratio of all salaries, wages, commissions, and other compensation paid or incurred by the taxpayer in this State for services performed in connection with the trade or business of the taxpayer during the taxable year to the total salaries, wages, commissions, and other compensation paid or incurred by the taxpayer in connection with its entire trade or business, wherever conducted during the taxable year . . . (c) . . . The ratio of gross receipts from business done within this State to total gross receipts from business done everywhere . . . (d) The average inventory ratio, the salaries and wages ratio, and the gross receipts ratio shall be separately determined and the three percentages averaged and the net income of the

corporation allocated and apportioned to Georgia according to such average." In determining the amount of such a taxpayer's net income which should be allocated and apportioned to this State, the act of 1950, unlike the act of 1941, does not permit the use of two or one of the factors making up the formula, but expressly declares that they must all be used by the taxpayer in determining the amount of its net income which should be allocated and apportioned to this State. Evidently, the legislature found that the three-factor-ratio formula prescribed by the act of 1941 and the taxpayer's right to use only so many of the factors as it had or employed in its business activities failed to make a fair allocation and apportionment of its net income to this State. It is an elementary proposition of law that a statute is never to be construed so as to produce an unreasonable result and so as to defeat its over-all purpose so long as it is open to a construction which will produce a reasonable result consistent with the purpose for which the statute was enacted. In this case that part of the plaintiff's net income allocated and apportioned to this State for the tax years involved was determined by using the three-factor-ratio formula prescribed by the act of 1950 and it is entitled to recover the amount sued for only if it had a right to use the formula, when the evidence shows, without dispute, that it at no time during the taxing period held any physical possession of inventories of Coca-Cola syrup anywhere for any purpose. Since the plaintiff did not have the inventories factor, the defendants contend that it was not entitled to use the prescribed formula in determining the amount of its net income which should be allocated and apportioned to this State and that its action to recover the amount sued for must therefore fail. As we construe the act of 1950, if a corporate taxpayer engaged in the business of manufacturing or selling tangible personal property, both within and without this State, does not as a matter of business practice employ tangible personal property in the form of inventories anywhere in the production of its income, then, to use the inventories factor as a zero or negative factor, as the plaintiff in this case did, and average it in with the other two factors, establishes a relationship between the non-use of inventories and the production of income; and such a relationship is diametrically opposed to the object of apportionment which is

to apportion according to use in the production of income. To use a zero or negative factor in a three-factor-ratio formula produces a result contrary to fact and actually distorts and dissipates the effect of the other factors which produced the income. The formula provides that the gross receipts derived from sales made within the State, and elsewhere, be balanced against the taxpayer's two items of expense, namely, inventories held within the State, and elsewhere, and compensation paid to employees for services in connection with the taxpayer's business within the State, and elsewhere. Viewing the act of 1950 in the context of the nature and object of apportionment, it seems clear to us that the legislature, when it prescribed a three-factor-ratio formula for corporations engaged in the business of manufacturing or selling tangible personal property, intended for it to operate and be applied reasonably and fairly to accomplish its proper apportionment purpose, and, therefore, to be available for use and applicable only to such businesses in which inventories is an income-producing factor. Subsection 4 (a) of the act goes further to prescribe that the inventory factor must be "the average of the monthly inventories"—obviously to more closely relate inventories as a matter of regular business practice to the production of income and to eliminate the distortion of year-end manipulations in the direction of no-inventory. The object of apportionment is to fairly allocate the net income of the taxpayer, and this is accomplished by the selection of factors which are causally related to the production of the income, and a fair and proper allocation is obtained only when all of the factors of the formula actually exist and are used by the taxpayer in making an apportionment of its net income.

The act of 1950 expressly retains of force and effect the provisions of §§ 92-3114 and 92-3115 of the Code of 1933, and under those sections that part of the net income of a corporation engaged in the business of manufacturing or selling tangible personal property in this State, and elsewhere, which should be allocated and apportioned to this State may be determined; and this is especially true where such a corporation in its regular business activities does not have all of the factors of the aforementioned formula. Under applicable law and the evidence in this case, the Court of Appeals erred in holding that the plaintiff

was entitled to use the three-factor-ratio formula prescribed by Code § 92-3113 (4) in determining the amount of its net income for the years involved which should be allocated and apportioned to this State. And since the plaintiff's action is based entirely on its right to use the formula, it becomes unnecessary for this court to rule on the remaining assignments of error, which deal only with the method to be employed in ascertaining the "gross-receipts ratio" factor of the apportionment formula by a taxpayer when its income is derived from the manufacture or sale of tangible personal property in this State and elsewhere.

For the reason stated in division 2 of this opinion, the judgment complained of is erroneous.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., and Almand, J., who are disqualified.*